**NORTON v. HUMBLE OIL &
REFINING CO.**

No. 14202.

Court of Civil Appeals of Texas.
Dallas.

Feb. 24, 1950.

· Milton K. Norton and J. E. McLemore, Jr., both of Dallas, for appellant.

William McCraw, Dallas, and Lee M. Sharrar and Felix A. Raymer, both of Houston, for appellee.

YOUNG, Justice.

The appeal is from grant of a temporary injunction, defendant Ralph M. Norton here asserting that the doctrine of res adjudicata is conclusively applicable to plaintiff's allegations and proof. (There had been a prior suit between the parties resulting in judgment of permanent injunction.)

Appellant at all material dates herein has maintained an oil and gas service station at Harwood and Live Oak Streets. In May '48, he accepted a dealership under written contract with appellee for selling to the general public a full line of Humble's petroleum products in the city of Dallas, Texas. As a part of this business arrangement Humble authorized a painting of the Norton station in its distinctive color combination (white background), furnishing him with a complete line of Humble's advertising material, placards, signs, symbols, and banners. Included was a large 4 x 8 foot ellipse metal sign, white background, blue border, and with the word "Humble" superimposed in the center in red, and suspended from a pole or standard at corner of defendant's premises (intersection of above named streets). Pump globes and panels of distinctive lettering and coloring were furnished Norton by appellee; in short, all indicia of dealership that were furnished to other authorized dealers.

Some three months later these contractual relations were terminated at Norton's request, Humble thereupon removing from his premises all indicia of dealership, including the large ellipse sign at corner, pump globes and panels, placards and banners; the general distinctive color scheme remaining the same, as the station was not repainted.

In October '48 appellee's first suit was filed, the Humble Company in effect complaining that shortly after termination of above mentioned relationship, Norton, without authorization, had hung another metal

ellipse sign at the same corner of his station similar to the one just removed, with the same large red lettering of word "Humble," and beneath in much smaller letters the words "Motor Oil." Plaintiff also pled that without authority defendant had furnished or permitted his station employees and attendants to use and display on their caps and apparel the trade-mark "Humble" within ellipse design and otherwise; same being displayed in such manner as they would be seen by customers calling at defendant's station for petroleum products; that aforesaid elliptical sign with its distinctive coloring and lettering had been trade-marked and registered both in the State of Texas and with the United States Government; that its use, aside from this, in connection with the sale of petroleum and its products through the years had given to the word "Humble" such a secondary meaning as that plaintiff had proprietary rights thereto; and that defendant's unauthorized use constituted an infringement to injury of plaintiff and remediable only by injunction. On preliminary hearing and taking of evidence a temporary injunction issued in the cause, later made permanent (April 15, 1949) without objection, requiring Norton to remove from metal pole or standard the large elliptical sign carrying the word "Humble" in large red letters in center and words "Motor Oil" beneath in smaller letters; also enjoining defendant from the use or display of any sign or symbol containing the word "Humble" at any place on said premises unless same be on a can or container of Humble products purchased by Norton in due course of trade.

The instant suit for temporary injunction was filed by Humble Oil & Refining Company against same defendant on September 12, 1949, which, together with two trial amendments filed during the hearing thereon (November 12, 1949), forms basis of restraint in the order here appealed from. After detailing the full history of previous litigation, culminating in above mentioned perpetual injunction of April 15, 1949, petitioner alleged that defendant Norton had embarked upon a plan or program of abiding said prior order "to the letter, but of avoiding the spirit thereof, and in pursuance of such plan or program removed the ellipse sign aforesaid from its then location, and removed from such ellipse the words 'Humble' and 'Motor Oil,' and replaced such words with the word 'Extra' printed in type and design and characteristic color as said word appears in all advertising of this plaintiff"; pleading further that "Defendant surreptitiously obtained advertising material prepared by plaintiff for use only by authorized dealer stations, including banners, posters and cardboard displays, and, in a studied effort to comply with this court's previous order in such a way as to avoid being held in contempt, but on continuation of his plan to simulate plaintiff's place of business, removed or partially obliterated from such advertising material the word 'Humble' wherever it appeared, and displayed such banners and posters in the standard manner as they appeared in all authorized Humble dealer stations, * * *."

In trial amendments plaintiff alleged that defendant continues to maintain on his station and premises a color scheme generally identical with that used by it with the result of confusing and misleading the public into believing that such is an authorized Humble station; that the long and universal use by plaintiff of the word "Extra" in distinctive lettering along with its advertisements of Humble and Esso oil and gas, has given such word a secondary meaning and synonymous with Humble products; that defendant's aforesaid acts in the aggregate constitute a studied and deliberate plan to confuse and deceive the public into believing that when purchasing products at defendant's station (allegedly inferior) they are also obtaining products of plaintiff's manufacture; being unfair trade practices against plaintiff to its irreparable injury and for which it has no adequate legal remedy. The prayer for relief was in substance that defendant be restrained from (1) continuing to display any posters, banners, cards or other visual advertising either prepared by or for use by plaintiff and its authorized dealers, or reproductions or facsimiles thereof; (2) displaying on or adjacent to defendant's said station any sign, symbol, device, or advertisement containing the word "Extra" in any shape or pattern; (3) maintaining the present color scheme of his oil station or any other combination of

colors calculated to deceive or mislead the public into believing that defendant's place of business was one operated by plaintiff or its authorized dealers; (4) use of pump globes or panels of same or similar size or color scheme, type or lettering as that used by plaintiff or its dealers; (5) displaying any elliptically shaped sign on or adjacent to defendant's premises; (6) similarly as to a display of any of plaintiff's products.

The temporary injunction that followed an extensive hearing and now complained of merely restrains defendant from (1) displaying on or about his premises any posters, banners, cards, or other visual advertising matter in his possession (or obtained in future) which was prepared by plaintiff company as advertising material for its own use or that of its authorized dealers, or any reproduction or facsimile thereof; and (2) displaying in or about said oil station any sign, symbol, device, or advertisement containing the word "Extra" in any form, shape, or fashion "other than may now be displayed on the premises aforesaid."

Under appellant's two points the court's grant of temporary injunction is not challenged for any insufficiency of evidence. It is asserted that appellee is barred from any relief whatsoever on other grounds, namely, that as the matters undertaken to be pled and proven in the two suits involve virtually identical subject matter, the rule of res adjudicata becomes a complete defense to this second application for injunctive relief.

While in both suits the same property and parties are involved, the foregoing analysis of pleadings and judgments sought in the consecutive causes clearly demonstrates the existence of two separate and distinct causes of action; complaining in the one suit of a distinct violation of plaintiff's rights by an unauthorized use and display of its trade-mark "Humble"; in the other charging a violation of rights not arising until after entry of the November '48 judgment, and involving the more comprehensive issue of unfair trade competition; in other words, that, to avoid effect of the prior judgment, defendant had consummated a plan or scheme to so simulate the appearance of a Humble station as that the public would be indirectly misled rather than directly. We agree with the rather extensive discussion of res adjudicata as presented by appellant concerning finality of judgments and that issues once decided should remain at rest. However, as observed by the text writer in 26 Tex.Jur. p. 115, " * * * this does not mean that a new suit upon a different fact situation will be barred. On the contrary, it has been said by high authority that 'where two suits seek the same relief, but upon a different state of facts, the adjudication in the one case constitutes no bar to a recovery in another.' " [1]

Likewise we are in accord with the statement generally expressed that a judgment is not only final as to the matter actually determined but as to every other matter the parties could have litigated and that should have been tried. But what is meant by these or similar expressions, says the Supreme Court in Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 8, 66 L.R.A. 745, 107 Am.St.Rep. 596, is that "A judgment is conclusive upon the issues tendered by the plaintiff's complaint"; and to come within the rule of res adjudicata as defined in the cited case, the issue or cause of action must be in existence and not merely one in prospect. Such qualification is implicit in the following statement from Scott v. Lewis, Tex.Civ.App., 64 S.W.2d 365, 366, viz: "The general rule is well settled that a final judgment is conclusive of questions which might have been litigated and decided, which are incident to or essentially connected with the subject-matter of the original suit, and such a judgment is conclusive against all matters, both offensive and defensive, which might have been brought forward for determination by the exercise of reasonable diligence." Obviously appellee could not by diligence or otherwise have anticipated in its first suit an issue or action not then in existence and which could only arise out of future acts and conduct of the adverse party.

It is finally and earnestly argued that both suits concern identical subject matter, " * * * that is, to the effect that appellant was and is engaged on a scheme to give the public an impression that

---

1 County of Mobile v. Kimball, 102 U.S. 691, 26 L.Ed. 238, 242.

he, appellant, was selling appellee's products." But the "scheme" as appellant describes it, by which he sought this end, was different in each instance; and the trial court could not by final decree in the first suit have generally enjoined defendant from committing *any act,* without naming it, which would have the effect of deceiving or misleading the public. Such generality in matter of restraint is contrary to settled law and Rule 683, Texas Rules of Civil Procedure, requiring that injunctions issue against specific acts. Also, to conform to the stated rule, as appellee clearly points out, " * * * the act must be in the course of commission or at least threatened. It is incumbent, therefore, for an aggrieved party to await the commission of the act, or to await its threat."

Appellant's points must be overruled and judgment of the trial court affirmed.